# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

RITA ENGLAND, )
)
        Plaintiff, )
)
v. ) Case No. CIV-14-179-RAW-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the )
Social Security Administration, )
)
        Defendant. )

## REPORT AND RECOMMENDATION

The claimant Rita England requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on August 24, 1959, and was fifty-four years old at the time of the most recent administrative hearing (Tr. 515). She graduated high school, completed training for office administration, and has worked as a secretary (Tr. 260, 502). The claimant alleges she has been unable to work since December 31, 2002, due to epilepsy and problems with her epilepsy medications, nerve pain in her legs, migraine headaches, lumbar deterioration, bursitis, and high blood pressure (Tr. 255).

## Procedural History

On January 31, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Jeffrey Wolfe conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated February 6, 2009 (Tr. 10-17). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-11-062-JHP-SPS, and remanded the case to the ALJ with instructions to properly consider the evidence at step two, particularly the claimant's alleged mental impairment (Tr. 544-556). ALJ Bernard Porter held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated March 5, 2014 (Tr. 482-504). The Appeals Council again denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ found that the claimant met the insured status through December 31, 2002, and made his decision at step five of the sequential evaluation in light of the date last insured. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently; push/pull as much as she could carry; stand/walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally use hand controls, reach overhead, handle, finger, feel, and climb ramps and stairs; never crawl or climb ladders, ropes, and scaffolds; and she must avoid exposure to unprotected heights, moving mechanical parts, operation of motor vehicle, temperature extremes, as well as dusts, fumes, gases, humidity, and wetness. Additionally he found that, due to psychologically based factors, she was limited to simple tasks and making simple work-related decisions; and having frequent contact with supervisors, co-workers, and the public (Tr. 494). If she could perform light work, she could also do sedentary work (Tr. 494). The ALJ thus concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, sorter and router (Tr. 502-503).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly consider the opinion of her treating physician, Dr. William Knubley; (ii) by improperly disregarding her mental impairments in formulating her RFC; (iii) by failing to properly assess her

-4-

credibility; and (iv) by failing to fully develop the record. None of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

Because the medical evidence in this record has been extensively summarized in previous opinions, the undersigned Magistrate will only summarize the evidence pertinent to this second appeal. As such, Dr. Knubley's treatment notes reflect that he treated her for seizures, migraine headaches, and depression both prior to and after the alleged onset date/date last insured of December 31, 2002, and included regular monitoring and adjusting of her prescription medications. In his dictated notes on March 29, 2000, he states that he treated the claimant for complex partial seizures with secondary generalization, and he noted that the claimant had experienced no major seizures and only one "brief twitch" since her previous office visit (Tr. 421). On June 13, 2000, Dr. Knubley released her to drive beginning August 2000 (Tr. 420). On October 30, 2000, Dr. Knubley again noted that the claimant had not experienced any seizures, but he also treated her for tinnitus and possible arthritis (Tr. 419). Dr. Knubley again noted no seizures on December 21, 2000, as well as possible carpal tunnel syndrome and tendinitis (Tr. 418). On August 6, 2001, Dr. Knubley noted that the claimant had gone without seizures for approximately eighteen months, but that she was experiencing increased depression, insomnia, and migraine headaches at least twice a week (Tr. 417). On September 14, 2001, Dr. Knubley noted that a recent change in the claimant's migraine medication had somewhat improved her headaches, and that she was also sleeping better, and he suggested that the claimant consider getting a job, "as it would probably make her feel better," and the claimant understood and agreed (Tr. 416, 745).

On December 27, 2001, Dr. Knubley stated that there were no reported seizures and that her blood pressure was under control, but that she was still experiencing several migraines a month (Tr. 415). By April 18, 2002, the claimant reported that she had not experienced any seizures, and that her headaches were well-controlled, but that she still experienced one to two per month (Tr. 414). The claimant also reported pain and tingling in her extremities, but Dr. Knubley found it "hard to pin down anything," and noted the claimant had normal reflexes, strength, and sensation in her lower extremities (Tr. 414). On February 5, 2003, Dr. Knubley noted the claimant was stable, and that an MRI showed several heterotopias as the likely cause of her seizures, and adjusted her depression medication after reports of obsessive thinking (Tr. 319). On November 14, 2003, Dr. Knubley's assessment stated that he could not "say she has anything other than chronic low back pain due to her current weight" (Tr. 412). On February 27, 2007, Dr. Knubley completed an Attending Physician's Statement that purported to apply to her abilities on or before December 31, 2002, noting that he had treated the claimant since 1992 (Tr. 343). He diagnosed her with complex partial seizures, migraine headaches, and chronic sleep disorder, indicating that her symptoms would interfere with her attention and concentration, as well as her ability to tolerate work stress, that she would need to take unscheduled breaks during an eight-hour workday and as a result of side effects of her medications, that her impairments would result in good and bad days, and that they would affect her more than four days a month (Tr. 343).

    The claimant appeared and testified at an administrative hearing on November 19, 2008. She testified that she has been on seizure medications since 1996; that her

medications make her sleepy, drowsy, and dizzy; and that she takes two naps a day (Tr. 36). At the second administrative hearing, she testified that she stopped working in 1997 after experiencing a number of mini-seizures (Tr. 518-519). She stated she believed the main reason she could not work in 2002 was her bilateral carpal tunnel problems for which she underwent surgery on the right wrist in 2001 but believed she did not get a good result, and that she had fallen into a "deep, deep depression" (Tr. 521, 530). She further testified that she had been experiencing a couple of migraines a week, and had received an injection in her shoulder for bursitis (Tr. 523-524).

Medical opinions from a treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [404.1527 and 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv)

consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *Watkins*, 350 F.3d at 1301 [quotation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

In this case, the ALJ adequately discussed and analyzed Dr. Knubley's opinion. At step two, the ALJ thoroughly summarized the notes from each of the claimant's visits with Dr. Knubley, both before and after her date last insured, and found at step four that his 2007 Attending Physicians Statement was not consistent with treatment notes from 1999 though 2002, during which time he encouraged the claimant to get a job, noted her seizures had been stable and her paresthesias was likely related to anxiety, and she had requested to start driving again (Tr. 500). He compared those notes to a 2007 treatment note indicating issues with medication that would prevent her from working at that time, and that the claimant's blood pressure was not under control due to noncompliance with medication (Tr. 500). The ALJ also opined that Dr. Knubley may have been sympathetic to the claimant's plight in preparing his Attending Physicians Statement. The claimant argues that because he is a board-certified neurologist, the ALJ erred in giving state reviewing physician opinions "great weight" while giving Dr. Knubley's opinion

diminished weight and assuming he was biased. Based on a review of the entire analysis employed by the ALJ, the undersigned Magistrate Judge finds that although the ALJ's statements regarding sympathy to the claimant approach speculation the ALJ did not commit error in the entirety of his analysis by failing to include any limitations imposed by Dr. Knubley in the claimant's RFC. *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

The claimant next contends that the ALJ erred by failing to fully account for her mental impairment in formulating her RFC, in direct contrast to this Court's previous remand order. However, in this case, the ALJ noted and fully discussed the findings of each of the claimant's various treating, consultative, and reviewing physicians both prior to and after the insured period, including evidence related to her alleged mental impairment (Tr. 484-502). The claimant nevertheless notes that her own testimony at the most recent administrative hearing indicated that she had been in a "deep, deep depression" in 2002 that had intensified when she lost her job in 1997 (Tr. 522), and that the ALJ therefore erred in failing to follow this Court's previous remand order. But the ALJ specifically considered the claimant's depression, her testimony, and the relevant, related treatment notes in formulating her RFC. He noted that her depression appeared to be situational as a result of family problems or financial stressors, and that she had agreed with Dr. Knubley when he strongly recommended that she get a job (Tr. 498). Contrary to claimant's arguments, the ALJ thus discussed all the evidence in the record and his

reasons for reaching the RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir.2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.' "), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 404.1545, 416.946.

Third, the claimant contends that the ALJ erred in analyzing her credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias*, 933 F.2d at 801. But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the

regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not completely credible" (Tr. 16). Use of boilerplate language is generally disfavored, *see, e. g., Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."), but this was not the sum total of the ALJ's analysis of the claimant's credibility. Elsewhere in the opinion, for example, the ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) medical records reflected that the claimant's impairments, including seizures, migraines, neurologic symptoms, and rotator cuff problems were effectively controlled by medication or of short duration; (ii) the claimant sought no further treatment for her left carpal tunnel after her 2001 surgery, and has not complained to a physician of right hand pain since 2002; (iii) although she testified that she did not have insurance for her right shoulder surgery, she did have insurance prior to her date last insured, the relevant time frame; (iv) her described activities, including

sharing guardianship with her husband over her two grandchildren, belied her claimed limitations; and (v) the claimant's agreement with her physician in 2001 that her depression was likely situational and would improve if she were working (Tr. 496-502). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

Finally, the claimant argues that the ALJ failed to fully develop the record, particularly with regard to her mental impairments. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations." *Henrie*, 13 F.3d at 361 [citations omitted]. Here, the claimant has not met this burden.

The ALJ specifically noted every medical record available in the lengthy administrative record from 1981 through 2013, *and still concluded* that she could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an

ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber*, 20 Fed. Appx. at 822 ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. Essentially, the claimant asks the Court to reweigh the evidence in the record, which the Court cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**